DADE, J.
delivered the opinion of the Court.
The question is, whether the offence of which the plaintiff has been convicted, and' had judgment, is a misdemesnor-, punishable by indictment at the common law?
The class of misdemesnors within which it is insisted this offence is comprehended, is that of offences contra bonos mores, over which the Court of King’s Bench in England, and the Superior Courts of Law of this Commonwealth, have always claimed to have jurisdiction. It is admitted, that before the statute of circumspecte agatis, 13 Edward 1, the Court of King’s Bench did on this principle punish the offences of incontinency, and that by that statute the jurisdiction was transferred to the Ecclesiastical Courts. It may be well doubted whether the King’s Bench before the statute, or the Courts Christian since, looked beyond the simple fact of incontinence, as that offence is at present contemplated and punished by our own acts of Assembly. In other words, whether they looked beyond the mere offence of incontinence, as consisting in the single act of cohabitation between persons of different sexes, without the rites of marriage, not varied by any fraud, deception, or invei-glement which may have been practised by the man. But, after the statute of circum-specte agatis, the Court of King’s Bench did not exercise jurisdiction in punishing the mere act of incontinence. It, however, *519 retained its general power of punishing offences contra bonos *mores, and it is presumed might have punished an offence of incontinence combined with circumstances, which, beyond the mere criminality of the simple fact, were calculated to make it injurious to society ; as, in case of incontinence in a street or highway. But, in such cases the jurisdiction would not spring from the criminal character of the simple fact, but from its publicity ; as, there are many cases where an act, which is not criminal in private, becomes penal by the publicity which attends its perpetration. The act of Sir Charles Sedley, in running naked through the streets, derived its whole ■criminalty from its publicity. It is not, therefore, in this case allowable to connect the criminality of the mere act of incontinence, which as such, is punishable in a certain mode prescribed by the statute, with the particular circumstances of fraud and deception, and the special injury to the female, so as to make the supposed common law offence, {as the Courts might entertain it in England, since the statute of circumspecte agatis,) ■derive support, or even acquire being from the statutory offence. If the statutory mis-demesnor of simple incontinence is to be punished, it must be according to the statute. If there be other circumstances in the •case which entitle the Common Law Courts to jurisdiction, those circumstances must of themselves constitute a misdemesnor. By these principles, the only two reported cases in the English books are to be tested. The case of The King v. Lord Grey and others. 9 State Trials, (Cobbet’s edition,) pa. 127, was that of an information, alleging a conspiracy to take away, and debauch a maiden over the age of sixteen, and under twenty-one, and an accomplishment of the act by those means. This conspiracy is emphatically charged in the information, and as it was to do a wrongful act, for which certainly, if done, an action lay to the father of the maid, the conspiracy, if proved, clearly amounted to a common law misdemesnor. So, in the case of Sir Erancis Blake Delaval and others, 3 Burr. 1432, which was “a motion for an information ^against the defendants for a conspiracy to put a young girl into the hands of a gentleman of rank and fortune, for the purpose of prostitution,” although Lord Mansfield, in allowing the motion, intimates an opinion that the Court of King’s Bench might have jurisdiction of the case, as one contra bonos mores, yet he decides it on the ground that there was in that case, “a conspiracy, and confederacy;” which, says he, “areclearly and indisputably within the proper jurisdiction of this Court.” Without doubt in these cases, the Court having jurisdiction •of them, on undeniable common law principles, the punishment in case of conviction, might well he aggravated by the baseness, perfidy, or malignity, which was the motive and end of the conspiracy. In like manner, as in trespass, circumstances may aggravate the damages, which would not of themselves alone support the action. But clearly, neither of these cases does maintain the position, that as a common law misdemesnor, an indictment or information will lie, either for simple incontinence, or for incontinence produced by means of deception, inveiglement, or enticement, in other words, by seduction.
It is too late now to assume jurisdiction over a new class of cases, under the idea of their being contra bonos mores. We must consider the practice of the English Courts, from which we derive the principle, as having settled in the course of many centuries, the true limits and proper subjects of this principle. If we are to disregard these land marks, and take up any case which may arise under this principle, as res integra, then might it be extended to cases which none has yet thought of as penal. A case of slander may display as much baseness and malignity of purpose, as much falsehood in its perpetration, as ruinous effects in its consequences, and as pernicious an example in its dissemination, as this case of seduction. And yet none would think of prosecuting it criminally. It is true, that if something peculiar in our situation had given rise to a class of cases contra bonos mores, as in regard to our ^slaves, which could not have existed in England, we might be justified in applying the rule in the absence of all precedent. But, in relation to seduction, no such supposition can be made, as we know from the books of reports that many such cases have occurred there. And we even see that in two cases, it was in fact the prominent feature, and yet the jurisdiction in one of them was made to hang on another hinge; and in the other, which was never decided, was certainly fortified by the allegation and proof of a common law misdemesnor.
Erom these premises, it would seem to be proper to infer that since the statute of cir-cumspecte agatis, in England, the Common Law Courts have never taken jurisdiction of the mere offence of incontinence, nor of any offence of incontinence combined with other reprehensible circumstances, not in themselves importing a common law mis-demesnor: that in this country the Legislature has taken up the subject of simple fornication and adultery, and has defined a precise mode of proof, and a fixed and certain punishment: that there is no reason to believe, that these statutes are cumulative; but, that they occupy the whole ground: and that, as in England, the offence being merely spiritual, is not, under any circumstances, allowed to be the foundation of a criminal prosecution in the Courts of Common Law : so here, by parity of reasoning, the offence being entirely statutory, it shall not be converted into the foundation of a common law misdemesnor.
If these premises and deductions be true, we must throw out of this case the statutory criminality of the mere act of incontinence, and then we cannot support the indictment, unless the other circumstances amount to a common law misdemesnor. If they had made out a case of conspiracy, that desideratum would have been supplied. But, it is not found in the artifices and contrivances, which may have been used in alluring the female from the path of virtue, and the home of her parent. *'Eor these reasons, the Court is *520 of opinion, that the judgment of the Superior Court of Chesterfield be reversed, and this Court proceeding to give such judgment as the said Superior Court ought to have rendered, it is further considered that of the offence of which the said Samuel Anderson bath been indicted, and convicted, he be acquitted and discharged, and that he go thereof without day.
Note by Brookjünbbough, J. The statute of cir-cumspecte agatis, may be seen in the original Latin in 2 Colre’s Inst. 487, and in its English dress, in 2 Bac. Abr. p. 171, title “Ecclesiastical Courts," D. In his commentary on that statute, Lobd Coke says, that “in ancient time, the King’s Courts, and specially the Leets, had power to enquire of, and punish fornication and adultery.” The authority of the King’s Courts over these mere spiritual offences, as they are called, appears to have ceased with the above statute, which forbids the Judges from interfering with the Courts Christian, in punishing them. That statute was enacted about the year 1285, that is, several centuries before the Colonization of Virginia, and consequently, that part of the ancient common law of which Lord Coke speaks, was not brought here by our ancestors. It cannot for a moment be supposed that the act of 1792, which repeals all British statutes, was intended to bring into existence an old law of England, which had never existed here.
But, although that common law power did not prevail, yet our ancestors, at a very early period, enacted several statutes on the subject. In the year 1642, it was enacted, that there should be a yearly meeting of the Ministers, and Church Wardens, before the commander, and commissioners of every County Court, in the nature of a visitation, and that the Church Wardens, on oath, should make presentment (inter alia) of all persons guilty of these high and foul offences. 1 Hen. Stat. at Large, 240. See also, p. 310. And in 1657, it was enacted, that tor scandalous living in that way, the person convicted should be severely punished, and be held incapable of being a witness, and of bearing any public office in the Colony. Ib. 433. These acts seem to have been repealed in 1696, and a new enactment was then made on the subject. 3 Hen. Stat. 139. In 1705, it was enacted, that every person committing these offences, and thereof convicted by the oaths of two or more credible witnesses, or confession of the party, should be punished, for fornication, by a fine of 500 pounds of tobacco, and for adultery, by a fine of a thousand pounds of tobacco; to be recovered by the suit or prosecution of the Church Wardens, by bill, plaint, or, information, for the benefit of the poor of the parish. Ib. 361. The provisions of the act of 1705, have been continued to this day, except as to the amount of the fine, and that the prosecution is to be carried on by the overseers of the poor. 1 Rev. Code of 1819, ch. 141, sec. 6.
There is no statute, either in England, or in Virginia, against the offence of seduction, except those which relate also to abduction; and these only apply where the female is under sixteen years of age.
And with respect to the punishment of seduction, as being an offence contra bonos mores, there does not appear to be a single authority for such a prosecution in the English Courts, unless where it is accompanied by conspiracy, or the like; but, civil prosecutions for these offences, are known to be very common.